**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

**JASON SINGLETON**,

    Plaintiff,

    -against-

**THE CITY OF GENEVA** and
**DETECTIVE STEVEN VINE,**

    Defendants.

Case No.: 23-cv-6359

**COMPLAINT**

PLEASE TAKE NOTICE that Plaintiff Jason Singleton, by his attorneys, Rickner PLLC, complaining of the Defendants, hereby alleges as follows:

**NATURE OF THE CASE**

1. This is an action to recover damages for the violations of JASON SINGLETON'S rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments of the United States Constitution, as well as supplemental claims under the State of New York.

2. Despite his innocence, JASON SINGLETON ("Singleton" or "Plaintiff") was wrongfully convicted and served nearly four years in prison for criminal possession of a controlled substance in the third degree.

3. The wrongful conviction and ensuing damages were caused by the intentional and malicious conduct of Defendant STEVEN VINE ("Vine"), a detective within the City of Geneva Police Department responsible for the arrest and the initiation of criminal proceedings against Singleton, and the City of Geneva. It is also due to the fault of the Defendant City of Geneva, as policymaker, that enable and fostered unethical cultures of closing cases and obtaining convictions at all costs and at the expense of fair and honest investigations, which included failure to train, supervise, and/or discipline police about their obligations to conduct honest investigations and to

1

disclose exculpatory information and impeachment evidence under *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), and their progeny.

4. Liability against the Defendant City of Geneva is invoked under the doctrine of *respondeat superior* for the misconduct of Defendant Vine and the City of Geneva is liable under *Monell v. Department of Social Services of the City New York,* 436 U.S. 658 (1978), as its *de facto* policies and procedures were the driving force behind the constitutional violations that caused Singleton's wrongful imprisonment.

## JURISDICTION AND VENUE

5. This Court has original subject matter jurisdiction over Plaintiff's federal law claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) and (4) because his claims arise under laws of the United States, namely 42 U.S.C. §§ 1983 and 1988, and seek redress of the deprivation, under color of state law, of rights guaranteed by the United States Constitution, namely the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

6. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) as they are part of the same case or controversy giving rise to the federal claims and share the same nucleus of operative facts as the federal claims.

7. Venue is lodged in the United States District Court for the Western District of New York pursuant to 28 U.S.C. §§ 1391(a)-(c) and 1402(b) because substantial parts of the events or omissions giving rise to the claim occurred in the Bronx which is located in the Western District of New York.

## CONDITION PRECENT TO SUPPLEMENTAL STATE CLAIMS

8. Plaintiff complied with all conditions precedent to the commencement of the supplemental state claims.

9. On or about June 6, 2022, Plaintiff timely served a notice of claim upon the Defendant City of Geneva pursuant to Section 50-i of the New York General Municipal Law.

10. More than 30 days have elapsed since Plaintiff served the notice of claim and no payment or adjustment or offer of settlement has been made.

11. Plaintiff submitted to a hearing pursuant to Section 50-h of the New York General Municipal Law on March 7, 2023.

12. Plaintiff brings this action in a timely manner.

## JURY DEMAND

13. Plaintiff demands trial by jury in this action.

## PARTIES, EMPLOYEES, and POLICYMAKERS

14. Plaintiff was wrongfully prosecuted, indicted, tried, convicted, and imprisoned by the unlawful and illegal actions of the Defendants.

15. Defendant City of Geneva is and was at all times relevant herein a municipal corporation existing under and by virtue of the laws of the State of New York, and having the powers and duties imposed by law thereon and is situated in the Western District of New York.

16. The City of Geneva Police Department ("GPD") is and was at all times relevant herein an agency of the Defendant City of Geneva and the Defendant City of Geneva was a policymaker for this agency.

17. At all times relevant to this action, Defendant City of Geneva, by its agents, servants, and employees was responsible for the operation, maintenance, and control of GPD and the selection, training, supervision, and disciplining of police officers.

18. Defendant Vine is and was at all relevant times herein a duly appointed agent, employee, officer, and servant of the GPD.

19. Defendant Vine is being sued in his individual capacity.

3

20. At all relevant times, Defendant Vine acted toward Plaintiff under color of the statutes, ordinances, customs, and usage of the State and City of Geneva, and on behalf of and within the scope of his employment, duties and functions as an agent, employee, officer, and servant of GPD, and otherwise performed and engaged in conduct incidental to the performance of his lawful functions and duties.

21. Defendant Vine is entitled to indemnification under New York General Municipal Law Section 50-k and by contract.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

### Procedural History

22. On January 24, 2018, Plaintiff Singleton was wrongfully convicted after a jury trial of criminal possession of a controlled substance in the third degree.

23. The judgement of conviction was rendered after a jury trial under indictment number 17-04-050 in Ontario County Court.

24. On May 18, 2018, Plaintiff was sentenced to seven (7) years in prison plus three (3) years post release supervision.

25. On March 18, 2022, the Supreme Court of the State of New York, Appellate Division, Fourth Judicial Department reversed the judgment of conviction, dismissed the indictment, and remitted the case to Ontario County.

26. On or about March 28, 2022, all criminal charges against Plaintiff were dismissed by the Ontario County Court and the criminal proceeding terminated in his favor. *See People v. Singleton*, 203 A.D.3d 1646, 162 N.Y.S.3d 821 (Sup. Ct. App. Div., 4th Dep't 2022).

### The Illegal Stop and Singleton's Arrest

27. On February 8, 2017, Defendant Vine claims he received information from a Confidential Informant ("CI") that a black man from Rochester with the street name "Jay" was

staying at the America's Best Value Hotel ("America's Best") and had a warrant out for his arrest. Detective Vine was actively searching for Joshua Johnson, a suspect in a shooting that had occurred in late 2016, and who the Detective knew was a black man. Based on this loose connection, Detective Vine believed the black man the CI described might be Joshua Johnson. Detective Vine obtained a warrant for Joshua Johnson and made his way to America's Best.

28. Defendant Vine also relayed this information to the Ontario County Sherriff's Department ("OCSD"), as America's Best was just outside of GPD's jurisdiction. Both OCSD and GPD conducted surveillance on the hotel, waiting for a black man they believed to be Jay to leave the hotel room. Defendant Vine sat in a nearby parking lot waiting for word from OCSD and GPD.

29. Shortly after surveillance began, a taxi driven by Eric Passalacqua of The Other Taxi, picked up a black man at America's Best and drove approximately one half of a mile before being pulled over by OCSD and GPD. At the time of the stop, none of the OCSD or GPD officers, including Defendant Vine, had a physical description, including the age, height, weight, build, or skin tone, of the shooting suspect. The officers relied solely on the report of a black male staying at America's Best as a basis for the stop.

30. Despite there being no observable traffic infractions, OCSD and GPD, accompanied by Defendant Vine, stopped, and surrounded the vehicle with weapons drawn, ordering the driver out.

31. Defendant Vine then came around the side of the taxi, opened the front passenger door, and ordered the passenger out of the vehicle. The passenger, however, was not Joshua Johnson or "Jay", but the Plaintiff, Jason Singleton, who was on his way to his cousin's birthday party.

5

32. Despite confirming with the ID in his wallet that Singleton was not the Joshua Johnson the police were looking for, Defendant Vine and the other officers proceeded to search Singleton and the taxi van.

33. Defendant Vine asked Singleton if there was another man staying with him at America's Best. When Singleton answered in the negative, Defendant Vine became incensed, and threatened Singleton, stating that if he did not tell him who else was staying in the hotel, "this," he said, holding up a bag of cocaine, was going to belong to Singleton. During their search of the taxi, the officers had found baggies of a substance appearing to be cocaine.

34. Later, in police reports, Defendant Vine falsely claimed that he found the drugs in a gray Walmart bad on the floor, on the door sill on the right side of where Singleton was sitting. There was no bag on the floor in that location when Singleton got into the car.

35. Defendant Vine again asked Singleton if he knew Joshua Johnson or an individual named "Jay." When Singleton said he did not, he was immediately arrested for possession of cocaine.

### Singleton's Inditement and the *Mapp* Hearing

36. In an effort to justify the stop and search, GPD's Incident Report, dated February 2, 2017, stated that "[a] black male matching the wanted subject was observed getting into a cab operated by The Other Taxi." This was not true. It was a fabrication by Detective Vine, who had no description that matched Singleton at all.

37. On May 11, 2017, the Ontario County Grand Jury returned Indictment No. 17-04-050, charging Singleton with criminal possession of a controlled substance in the third degree. The indictment alleged that on February 8, 2017, Singleton possessed cocaine with intent to sell. This grand jury indictment was procured using fabrications by Detective Vine, including the false

statements about Singleton fitting the description and the false statement about where the drugs were found.

38.  On May 25, 2017, the Ontario County District Attorney ("OCDA") served Singleton with a copy of the Indictment, a copy of the Criminal Procedure Law Section 710.30 Notice, a statement of readiness for trial, and a copy of Singleton's criminal record history. Singleton entered a plea of not guilty and the trial court remanded him without bail.

39.  On July 6, 2017, OCDA provided their Notice to the Pre-Trial Order and stated that they would be using the six bags of cocaine, numerous unused bags, a razor blade and a razor blade sleeve, bags of marijuana, and the $190.36 that was seized from Singleton at the time of his arrest on February 18, 2017. Attached to the Notice to the Pre-Trial Order were the lab results stating that the bags with powder and the razor blade had cocaine, but the unused bags had no cocaine residue.

40.  On July 17, 2017, Singleton's defense attorney, Carrie W. Bleakley of the Office of the Ontario County Conflict Defender, filed an omnibus motion requesting, among other things, an Order suppressing certain tangible property and other evidence or a hearing on the issue. After OCDA submitted their answering affirmation on August 23, 2017, the trial court proceeded with a *Mapp* hearing.

41.  At the hearing, OCDA called Detective Vine as a witness and introduced a copy of the arrest warrant to provide support for the forcible stop.

42.  Detective Vine testified that he arrived America's Best after a CI told him that a black man with the street name "Jay" was staying there. He had obtained a warrant for Joshua Johnson's arrest based on the premise that they were looking for a black man, but admitted that he did not know the age, height, build, or skin tone of Joshua Johnson. He further admitted on cross-

examination that the only photograph he had seen of the suspect was from a video that did not clearly show Joshua Johnson's face.

43. Detective Vine told the OCSD and GPD officers to stop the taxi after hearing from the surveillance team that a black man had left the motel; Detective Vine himself was not in a position where he could observe the motel room himself. He and the other officers stopped and surrounded the taxi with their weapons drawn despite their failure to prepare a Use of Force Report disclosing that information.

44. Detective Vine falsely testified that when he approached the passenger side of the taxi, where Singleton was sitting, he saw a Walmart bag that contained micro-Ziploc baggies that appeared to contain cocaine on the door sill. He then requested a check of Singleton's warrants, which revealed a warrant for his arrest. Detective Vine then took Singleton into custody.

45. On September 22, 2017, Singleton's defense attorney filed a memorandum of law regarding the *Mapp* hearing, arguing that the evidence was seized in violation of the Fourth Amendment because the only reason the OCSD or GPD officers, including Defendant Vine, stopped Singleton's taxi because he was black. Defense counsel argued that this was unreasonable in accordance with the precedent set forth in *People v. Tejada* (270 A.D.2d 655 (3d Dep't 2000)) and that being a black man cannot alone be used to justify a forcible stop.

46. On October 24, 2017, the trial court held that OCSD and GPD had reasonable suspicion to stop the taxi based on the tip provided by the alleged CI.

**Singleton's Trial and Sentencing**

47. On January 22, 2018, the jury trial commenced before Ontario County Court Judge William F. Kocher.

48. Detective Vine was one of three witnesses to testify for the prosecution. He testified regarding the search warrant he obtained for Joshua Johnson, a black man who was allegedly

involved in a shooting. Contrary to his previous testimony at the *Mapp* hearing, however, Detective Vine told the jury that he knew the height, weight, skin tone, and build of the individual he was looking for. He believed Singleton was this individual and ordered that OCSD and GPD stop the vehicle. He collected the cocaine from the taxi Singleton was in after effectuating the search warrant on him that was for Joshua Johnson.

49.   He also testified that he did not know who else had been in the taxi that day and admitted to telling Singleton that if Singleton did not tell him who was in the hotel room that he "would place the drugs on him." Detective Vine found no one else in the hotel room; did not take any photographs of the inside of the taxi or where the crack cocaine was located; did not attempt to get any fingerprints from the packages of the cocaine baggies; nor did he seek to do any forensic analysis of the cell phone that was seized from Singleton. He further testified that he did not make any observations of Singleton as he was leaving the hotel room to determine if he had a Walmart bag on his person when he got into the taxi.

50. Despite all this, Singleton was convicted of criminal possession of a controlled substance in the third degree and sentenced to seven (7) years in prison plus three (3) years post release supervision.

### Appeal and Exoneration

51. On April 9, 2018, Singleton's defense attorney filed a Notice of Appeal of his conviction after trial.

52.  On March 18, 2022, the Supreme Court of the State of New York, Appellate Division, Fourth Judicial Department reversed the judgment of conviction, dismissed the indictment, and remitted the case to Ontario County. The Appellate Division determined that the prosecution failed to establish that Detective Vine had reasonable suspicion to believe that Singleton was the shooting suspect and therefore, the tangible evidence recorded from the illegal stop should have been

suppressed. Because all evidence supporting the crime charged must be suppressed, the inditement necessarily must be dismissed.

53. On or about March 28, 2022, all criminal charges against Plaintiff were dismissed by the Ontario County Court and the criminal proceeding terminated in his favor. *See People v. Singleton*, 203 A.D.3d 1646, 162 N.Y.S.3d 821 (Sup. Ct. App. Div., 4th Dep't 2022).

54. Over four years after the illegal stop, Singleton was finally exonerated of a conviction for a crime he did not commit.

## Damages

55. From 2018 to 2022, Singleton was confined in the custody of the State of New York. During this period, he suffered greatly as a victim of unjust conviction and incarceration.

56. The injuries and damages sustained by Singleton arising from his unjust conviction and imprisonment include, but are not limited to: personal injuries; pain and suffering; severe mental anguish; emotional distress; loss of family; loss of companionship; loss of love; loss of income; infliction of physical and mental illness; humiliation; indignities; embarrassment; degradation; injury to reputation; permanent loss of natural psychological development; and restrictions on all forms of personal freedom, including but not limited to diet, sleep, personal contact, educational opportunity, vocational opportunity, athletic opportunity, personal fulfillment, sexual activity, travel, enjoyment, and expression.

57. As a direct result of Singleton's unjust conviction and imprisonment, many of the effects of these disabilities continue to plague him to this day and will continue to plague him for the rest of his life.

**FIRST CLAIM FOR RELIEF:**
**PROSECUTION WITHOUT PROBABLE CAUSE UNDER 42 U.S.C. § 1983**
**AGAINST DETECTIVE VINE**

58.  Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

59.  Detective Vine initiated a prosecution against Plaintiff without probable cause and that prosecution resolved in a complete dismissal of the charges, in favor of Plaintiff.

60.  The grand jury indictment is a nullity because it was procured using false evidence and statements and by withholding exculpatory evidence and statements.

61.  That by virtue of the aforementioned acts by Detective Vine, Plaintiff was deprived of civil rights guaranteed under the Fourth Amendment to the United States Constitution to be free from unreasonable or unlawful searches and seizures, and Detective Vine are therefore liable to Plaintiff for damages under 42 U.S.C. § 1983.

62.  As a result of the above unconstitutional conduct, Plaintiff was caused to suffer physical, economic, and emotional injuries, as well as a deprivation of liberty.

63.  As a result of the above unconstitutional conduct, Detective Vine are liable for punitive damages.

**SECOND CLAIM FOR RELIEF:**
**DUE PROCESS VIOLATIONS UNDER 42 U.S.C. § 1983**
**AGAINST DETECTIVE VINE**

64.  Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

65.  Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

11

66. Detective Vine provided false evidence and statements to the prosecution, defense counsel, and court, including the statements about where the drugs were found and that Plaintiff fit the description.

67. That by virtue of the aforementioned acts by Detective Vine, Plaintiff was deprived of due process and trial rights guaranteed under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution to be free from prosecution based on false statements and under *Brady v. Maryland*, 373 U.S. 83 (1963), and Detective Vine are therefore is liable to Plaintiff for damages under 42 U.S.C. § 1983.

68. As a result of the above unconstitutional conduct, Plaintiff was caused to suffer physical, economic, and emotional injuries, as well as a deprivation of liberty.

### THIRD CLAIM FOR RELIEF:
### *MONELL* CLAIMS AGAINST THE CITY OF GENEVA

69. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

70. The City of Geneva is liable for the conduct of Detective Vine under *Monell v. Department of Soc. Svcs.*, 436 U.S. 658 (1978) because the driving force behind these constitutional violations were the *de facto* and explicit policies and practices of their police department and the City of Geneva.

71. As a result, the City of Geneva is liable for any damages caused, except for punitive damages.

**FOURTH CLAIM FOR RELIEF:**
**MALICIOUS PROSECUTION AGAINST DETECTIVE VINE**
**AND THE CITY OF GENEVA**

72.  Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

73.  Detective Vine initiated a prosecution against Plaintiff without probable cause, and with malice, and that prosecution resolved in a complete dismissal of the charges, in favor of Plaintiff.

74.  Any presumption of probable cause conferred by the grand jury indictment is rebutted because the indictment was procured through false evidence and statements.

75.  As a result of the above tortious conduct, Plaintiff was caused to suffer physical, economic, and emotional injuries, as well as a deprivation of liberty.

76.  As a result of the above unconstitutional conduct, Detective Vine are liable for punitive damages.

77.  The City of Geneva is liable for the conduct of Detective Vine and any damages they caused under the doctrine of *respondeat superior*.

**FIFTH CLAIM FOR RELIEF:**
**NEGLIGENT HIRING, SCREENING, RETENTION, SUPERVISION AND TRAINING**
**AGAINST THE CITY OF GENEVA**

78.  Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

79.  The City of Geneva negligently hired, screened, retained, supervised, and trained Detective Vine. The acts and conduct of the defendants were the direct and proximate cause of injury and damage to Plaintiff's rights under the Constitution of the United States and the

Constitution of the State of New York, and committed torts actionable under the common laws and statutes of the State and New York.

80. As a result of the above tortious conduct, Plaintiff was caused to suffer physical, economic, and emotional injuries, as well as a deprivation of liberty.

81. As a result of the above unconstitutional conduct, Detective Vine are liable for punitive damages.

82. The City of Geneva is liable for the conduct of Detective Vine and any damages they caused under the doctrine of *respondeat superior*.

### SIXTH CLAIM FOR RELIEF:
### INTENTIONAL AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS AGAINST THE INDIVIDUAL DEFENDANTS AND THE CITY OF NEW YORK

83. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

84. Detective Vine engaged in extreme and outrageous conduct, which intentionally and/or negligently caused severe emotional distress to Plaintiff.

85. As a result of the above tortious conduct, Plaintiff was caused to suffer physical, economic, and emotional injuries, as well as a deprivation of liberty.

86. As a result of the above unconstitutional conduct, Detective Vine are liable for punitive damages.

87. The City of Geneva is liable for the conduct of Detective Vine and any damages they caused under the doctrine of *respondeat superior*.

14

**SEVENTH CLAIM FOR RELIEF:**
**VIOLATION OF ARTICLE I, § 12 OF THE NEW YORK STATE CONSTITUTION**
**AGAINST THE INDIVIDUAL DEFENDANTS**
**AND THE CITY OF NEW YORK**

88. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

89. Such conduct breached the protections guaranteed to plaintiff by the New York State Constitution, including but not limited to, Article 1, §§ 1, 6, 8, 9, 11, and 12, and including the following rights:

    i.    freedom from unreasonable search and seizure of her person and property;

    ii.    freedom from arrest without probable cause;

    iii.    freedom from false imprisonment, that being wrongfully detained without good faith, reasonable suspicion, or legal justification, and of which wrongful detention plaintiff was aware and did not consent;

    iv.    freedom from the lodging of false charges against him by police officers and prosecutors, including on information and belief, by some or all of the individual defendants; and

    v.    freedom from deprivation of liberty without due process of law.

90. As a direct and proximate result of defendants' deprivations of plaintiff's rights, privileges, and immunities guaranteed by the New York State Constitution.

91. As a result of the above tortious conduct, Plaintiff was caused to suffer physical, economic, and emotional injuries, as well as a deprivation of liberty.

92. As a result of the above unconstitutional conduct, Detective Vine are liable for punitive damages.

93. The City of Geneva is liable for the conduct of Detective Vine and any damages they caused under the doctrine of *respondeat superior*.

15

**WHEREFORE**, Plaintiff demands the following relief jointly and severally against

Detective Vine, as well as the City of Geneva:

        a.        Compensatory damages;

        b.        Punitive damages;

        c.        The convening and empaneling of a jury to consider the merits of the

                    claims herein;

        d.        Costs and interest and attorney's fees;

Such other and further relief as this court may deem appropriate and equitable.

Dated: New York, New York
      June 26, 2023

Rickner PLLC

By:      /s/

      Robert Rickner

14 Wall Street, Suite 1603
New York, New York 10005
Phone: (212) 300-6506
Fax: (888) 390-5401
*Attorneys for Plaintiff*

16